IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WADE THORNTON,                                   No. CIV S-08-1260-WBS-CMK-P

        Plaintiff,

   vs.                                           FINDINGS & RECOMMENDATIONS

SCHWARZENEGGER, et al.,

        Defendants.

_____/

        Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is plaintiff's complaint (Doc 1) and motion for emergency injunctive relief (Doc. 5).

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne,

84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff is a California state prisoner, currently being housed at Folsom State Prison.  He alleges that on May 30, 2008, he was informed that he was being endorsed for transfer to an out-of-state prison, and that this transfer would happen with or without his consent.  Plaintiff brings this action and request for emergency injunctive relief to stop his transfer.  He alleges that such a transfer violates his First, Eighth, Thirteenth and Fourteenth Amendment rights.  He raises four distinct claims in his complaint.

First, plaintiff states that transferring him to an out-of-state prison violates his First, Eight, and Fourteenth Amendment rights to Due Process and Equal Protection.  He claims that the defendants are selecting which prisoners to transfer based on the number of visits the prisoners receive, any affiliation with distinct ethnic groups and whether a prisoner has specific tattoos.  He also claims that state laws prohibit his transfer without his consent.

Next, plaintiff claims that the pending transfer violates his Eighth and Fourteenth Due Process rights and that the governor is abusing his gubernatorial powers.

Third, plaintiff claims the transfer violates his right of access to the court because out-of-state prisons do not have California legal material.

Finally, plaintiff alleges a violation of his Thirteenth Amendment rights because the state is transferring prisoners for monetary compensation, which violates the constitutional prohibition against the trading of slaves.  He also claims Due Process and Equal Protection

violations.

## II. DISCUSSION

### A. DUE PROCESS

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672 (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). Liberty interests can arise both from the Constitution and from state law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Meachum v. Fano, 427 U.S. 215, 224-27 (1976); Smith v. Sumner, 994 F.2d 1401, 1405 (9th Cir. 1993). In determining whether the Constitution itself protects a liberty interest, the court should consider whether the practice in question ". . . is within the normal limits or range of custody which the conviction has authorized the State to impose." Wolff, 418 U.S. at 557-58; Smith, 994 F.2d at 1405. Applying this standard, the Supreme Court has concluded that the Constitution itself provides no liberty interest in good-time credits, see Wolff, 418 U.S. at 557; in remaining in the general population, see Sandin v. Conner, 515 U.S. 472, 485-86 (1995); in not losing privileges, see Baxter v. Palmigiano, 425 U.S. 308, 323 (1976); in staying at a particular institution, see Meachum, 427 U.S. at 225-27; or in remaining in a prison in a particular state, see Olim v. Wakinekona, 461 U.S. 238, 245-47 (1983).

In determining whether state law confers a liberty interest, the Supreme Court has adopted an approach in which the existence of a liberty interest is determined by focusing on the nature of the deprivation. See Sandin v. Connor, 515 U.S. 472, 481-84 (1995). In doing so, the Court has held that state law creates a liberty interest deserving of protection only where the deprivation in question: (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 483-84. Prisoners in California have a liberty interest in

1  the procedures used in prison disciplinary hearings where a successful claim would not
2  necessarily shorten the prisoner's sentence.  See Ramirez v. Galaza, 334 F.3d 850, 853, 859 (9th
3  Cir. 2003) (concluding that a due process challenge to a prison disciplinary hearing which did not
4  result in the loss of good-time credits was cognizable under § 1983); see also Wilkinson v.
5  Dotson, 544 U.S. 74, 82 (2005) (concluding that claims which did not seek earlier or immediate
6  release from prison were cognizable under § 1983).
7         Prisoners have no liberty interest in avoiding being transferred to another prison.
8  See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215, 225-27
9  (1976); United States v. Brown, 59 F.3d 102, 105 (9th Cir. 1995) (per curiam).  Inmates have "no
10  justifiable expectation" that they will be incarcerated in any particular prison, and transferring an
11  inmate to another prison does not infringe a protected liberty interest.  Olim, 461 U.S. at 245;
12  Vitek v. Jones, 445 U.S. 480, 489 (1980).
13         Here, plaintiff's allegation that he is being denied due process in the potential
14  transfer to an out-of-state prison fails to state a claim.  As discussed above, prisoners have no
15  liberty interest in avoiding transfers to another prison, even out of state.  As plaintiff has no
16  liberty interest in avoiding such a transfer, he cannot state a claim for deprivation of due process.
17        B.    EQUAL PROTECTION
18         Equal protection claims arise when a charge is made that similarly situated
19  individuals are treated differently without a rational relationship to a legitimate state purpose.
20  See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972).  Prisoners are protected from
21  invidious discrimination based on race.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).
22  Racial segregation is unconstitutional within prisons save for the necessities of prison security
23  and discipline.  See Cruz v. Beto, 405 U.S. 319, 321 (1972) (per curiam).  Prisoners are also
24  protected from intentional discrimination on the basis of their religion.  See Freeman v. Arpaio,
25  125 F.3d 732, 737 (9th Cir. 1997).  Equal protection claims are not necessarily limited to racial
26  and religious discrimination.  See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir.

2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class) see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).

Here, plaintiff complains about the basis the defendants are using to determine which prisoners are transferred to out-of-state prisons. Some of the criteria plaintiff complains about include the number of visits a prisoners receives, affiliation with distinct ethnic groups and tattoos a prisoner has. These criteria appear to relate more to safety concerns that any discrimination. Safety concerns about individual prisoners would have a rational relation to a legitimate penological purpose. In addition, plaintiff fails to identify what criteria was used to select him as a potential transferee, and how that criteria was discriminatory. Plaintiff does not allege that he is a member of any protected class of prisoners, nor that the defendants are using such protected class, such as race or religion, as a basis for selecting plaintiff for transfer. Accordingly, plaintiff fails to state a claim for violation of his Equal Protection rights.

      III.    ACCESS TO THE COURTS

Prisoners have a constitutional right of access to the courts. See Lewis v. Casey,

1  518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d
2  1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures).
3  This right requires prison officials to "assist inmates in the preparation and filing of meaningful
4  legal papers by providing prisoners with adequate law libraries or adequate assistance from
5  persons trained in the law." Bounds, 430 U.S. at 828.  The right, however, only requires that
6  prisoners have the capability of bringing challenges to sentences or conditions of confinement.
7  See Lewis, 518 U.S. at 356-57.  Moreover, the right is limited to non-frivolous criminal appeals,
8  habeas corpus actions, and § 1983 suits.  See id. at 353 n.3 & 354-55.  Therefore, the right of
9  access to the courts is only a right to present these kinds of claims to the court, and not a right to
10 discover claims or to litigate them effectively once filed.  See id. at 354-55.

11         As a jurisdictional requirement flowing from the standing doctrine, the prisoner
12 must allege an actual injury.  See id. at 349.  "Actual injury" is prejudice with respect to
13 contemplated or existing litigation, such as the inability to meet a filing deadline or present a
14 non-frivolous claim.  See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007).
15 Delays in providing legal materials or assistance which result in prejudice are "not of
16 constitutional significance" if the delay is reasonably related to legitimate penological purposes.
17 Lewis, 518 U.S. at 362.

18         Here, plaintiff's claims are speculative at best.  As plaintiff has yet to be
19 transferred, he has no actual knowledge regarding the material available in the out-of-state prison
20 law library to which he may be transferred.  Plaintiff specifically points to an ongoing petition for
21 writ of habeas corpus he has pending in this court, case number 03cv0755.  However, plaintiff is
22 represented by counsel in that matter and his need for access to a law library is therefore
23 diminished.[1]  As plaintiff's claims are speculative and he cannot show any actual injury, his

---

25 [1]  The court takes judicial notice of the docket in case number 2:03-cv-0755-MCE-
26 DAD.  See Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967) (a court may take judicial notice of its own records)

complaint fails to state a claim for denial of access to the courts.

### IV. THIRTEENTH AMENDMENT

The Thirteenth Amendment provides:

> Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.

Here, plaintiff is a prisoner, not a slave. He has been convicted of a crime, and sentenced pursuant to a presumably valid judgment. He is not challenging his conviction in this matter, and if he is successful in challenging his conviction in a separate action, he will no longer be incarcerated. However, his contention that, as a slave or involuntary servant, he cannot be transferred by the State of California to an out-of-state prison in exchange for money based on the Thirteenth Amendment's prohibition of slavery fails to state a claim. There is nothing in the Thirteenth Amendment restricting the State of California from housing its prisoners in an out-of-state prison, and paying the out-of-state prison the cost involved therefore.

### V. INJUNCTIVE RELIEF

Plaintiff also moves this court for an emergency injunction in order to stop his out-of-state transfer. The legal principles applicable to requests for injunctive relief, such as a temporary restraining order or preliminary injunction, are well established. To prevail, the moving party must show either a likelihood of success on the merits of the underlying controversy and the possibility of irreparable injury, or that serious questions are raised and the balance of hardships tips sharply in the movant's favor. See Coalition for Economic Equity v. Wilson, 122 F.3d 692, 700 (9th Cir. 1997); Oakland Tribune, Inc. v. Chronicle Publ'g Co., 762 F.2d 1374, 1376 (9th Cir. 1985). The two formulations represent two points on a sliding scale with the focal point being the degree of irreparable injury shown. See Oakland Tribune, 762 F.2d at 1376. Under any formulation of the test, however, the moving party must demonstrate that there exists a significant threat of irreparable injury. See id. In the absence of a significant

showing of possible irreparable harm, the court need not reach the issue of likelihood of success on the merits.  See id.  The loss of money, or an injury whose measure of damages can be calculated in terms of money, will not be considered irreparable.  See id. at 1334-35.

The standard for a temporary restraining order is essentially the same.  The purpose in issuing a temporary restraining order is to preserve the status quo pending a more complete hearing.  The cases contain limited discussion of the standards for issuing a temporary restraining order due to the fact that very few such orders can be appealed prior to a full hearing.  It is apparent however, that requests for temporary restraining orders are governed by the same general standards that govern the issuance of a preliminary injunction.  See New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1347 n.2 (1977); Los Angeles Unified Sch. Dist. v. United States Dist. Court, 650 F.2d 1004, 1008 (9th Cir. 1981) (Ferguson, J. dissenting); Century Time Ltd. v. Interchron Ltd., 729 F. Supp. 366, 368 (S.D.N.Y. 1990).  In many cases the emphasis of the court is directed to irreparable harm and the balance of hardships because the merits of a controversy are often difficult to ascertain and adjudicate on short notice.

Eastern District of California Local Rules impose additional requirements for a motion for a temporary restraining order.  First, the court will consider whether the moving party could have sought relief by a noticed motion for a preliminary injunction at an earlier date without the necessity of seeking last-minute relief by motion for a temporary restraining order.  See Local Rule 65-231(b).  Second, the moving party must provide specific documents to the court in support of the requested temporary restraining order.  See Local Rule 65-231(c).

Finally, in cases brought by prisoners involving conditions of confinement, any temporary restraining order or preliminary injunction must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm.  See 18 U.S.C. § 3626(a)(2).

Here, plaintiff fails to demonstrate either a significant threat of irreparable injury and/or likelihood of success on the merits.  As plaintiff's complaint should be dismissed, without

leave to amend, for failure to state a claim, he has not demonstrated he will likely succeed in this matter.  In addition, he has not shown even a threat of irreparable injury in being transferred to an out-of-state prison.  Any injury plaintiff experiences could likely be rectified upon a showing of the actual injury, and he therefore fails to meet the requirement that the injury he will be subjected to is irreparable.  Accordingly, plaintiff's request for injunctive relief should be denied.

### III.  CONCLUSION

Because it does not appear possible that the deficiencies identified herein can be cured by amending the complaint, plaintiff is not entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

Based on the foregoing, the undersigned recommends that plaintiff's complaint be dismissed, without leave to amend, for failure to state a claim, and the motion for injunctive relief (Doc. 5) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: December 29, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE