UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

WADE THORNTON,

    Plaintiff,

           v.

ARNOLD SCHWARZENEGGER, Governor; GLENN TILTON, Director of the California Department of Corrections and Rehabilitation; MATTHEW KRAMER, Warden of Folsom State Prison,

    Defendants.
_____/

NO. CIV. 08-1260 WBS CMK

<u>ORDER</u>

----oo0oo----

        Plaintiff Wade Thornton, a prisoner proceeding <u>pro se</u>, brought this action pursuant to 42 U.S.C. § 1983 to prevent his pending transfer to an out-of-state prison. In his Complaint, plaintiff bases his § 1983 claim on four alleged constitutional violations: 1) that plaintiff's pending transfer and defendants' alleged criteria for selecting transferable inmates violates his rights to Due Process and Equal Protection; 2) that defendant

1

Governor Schwarzenegger's mandate to involuntarily transfer inmates to out-of-state prisons violates plaintiff's Eighth Amendment and Fourteenth Amendment rights; 3) that plaintiff's pending transfer violates his right of access to the courts; and 4) that the involuntary transfer of prisoners to out-of-state prisons violates the Thirteenth Amendment. Plaintiff also requests the court to enjoin his transfer to an out-of-state prison.

Pursuant to 28 U.S.C. § 1915A(a), Magistrate Judge Craig M. Kellison screened plaintiff's Complaint and recommended that it be dismissed with prejudice for failure to state a claim upon which relief can be granted. (Dec. 29, 2008 Findings and Recommendations ("F&Rs") 9.) On January 12, 2009, plaintiff filed timely objections to the Magistrate Judge's Findings and Recommendations. The sole ground underlying plaintiff's objection to the dismissal of his Complaint is that a prior version of California Penal Code section 11191 precludes defendants from involuntarily transferring him to an out-of-state prison. (Pl.'s Objections 1-2.) Pursuant to 28 U.S.C. § 636(b)(1)(C), this court has conducted a de novo review of the relevant findings and recommendations and will accept the Magistrate Judge's recommendation to dismiss plaintiff's Complaint with prejudice.

"'A liberty interest may arise from either of two sources: the due process clause itself or state law.'" Carver v. Lehman, 550 F.3d 883, 886 (9th Cir. 2008) (quoting Toussaint v. McCarthy, 801 F.2d 1080, 1089 (9th Cir. 1986)). The federal Constitution does not give rise to the liberty interest plaintiff

2

alleges because "an interstate prison transfer . . . does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself." Olim v. Wakinekona, 461 U.S. 238, 248 (1983); accord White v. Lambert, 370 F.3d 1002, 1013 (9th Cir. 2004). Plaintiff must therefore establish that the state has created a liberty interest and that the deprivation of that interest constitutes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).[1]

Relying on the version of California Penal Code section 11191 that applied at the time of his sentencing, plaintiff argues that the written consent requirement in the statute vested him with an irrevocable liberty interest in choosing to remain in an in-state prison for the duration of his confinement. (Pl.'s Objections 1-2; Compl. ¶¶ 4-7.) At the time of plaintiff's sentencing, section 11191 provided: "Any court or other agency . . . may commit or transfer [an] inmate to any institution within or without this state . . . , but no inmate sentenced under

---

[1] In his Findings and Recommendations, the Magistrate Judge stated that a state-created liberty interest could exist only if "the deprivation in question (1) restrains the inmate's freedom in a manner not expected from the sentence; and (2) 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" (F&Rs 3:22-26 (quoting Sandin, 515 U.S. at 484) (emphasis added).) In Sandin, however, the Supreme Court identified those two standards as separate and distinct avenues to establish a protected liberty interest. See Sandin, 515 U.S. at 484 ("[Instances when states create liberty] interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.") (emphasis added) (citations omitted).

3

California law may be committed or transferred to an institution outside of this state, unless he has executed a written consent to the transfer." Cal. Penal Code § 11191 (amended by A.B. 900 (2007)).

This written consent requirement was first displaced, however, on October 4, 2006, when Governor Schwarzenegger issued the "Prison Overcrowding State of Emergency Proclamation" ("proclamation") pursuant to his powers under the California Emergency Services Act, Cal. Gov't Code §§ 8550-8668. Prison Overcrowding State of Emergency Proclamation (Oct. 4, 2006), available at http://gov.ca.gov/index.php?/proclamation/4278/. As relevant to plaintiff's Complaint, the proclamation ordered the California Department of Corrections and Rehabilitation (CDCR) to exhaust all possibilities for voluntary transfers and then "effectuate involuntary transfers of California prison inmates." Id. The proclamation further provided that, "because strict compliance with California Penal Code sections 11191 and 2911 would prevent, hinder, or delay the mitigation of the severe overcrowding in [California] prisons, applicable provisions of these statutes are suspended to the extent necessary to enable the CDCR to transfer adult inmates . . . to institutions in other states . . . without consent." Id.[2]

---

[2] No court has specifically addressed the validity of the proclamation with respect to its abatement of section 11191's consent requirement. But see Cal. Corr. Peace Officers' Ass'n v. Schwarzenegger, 163 Cal. App. 4th 802, 820, 825 (2008) (holding that Governor Schwarzenegger "did not exceed his authority in issuing the proclamation" and that the proclamation did not violate Article VII of the California Constitution, as implemented by the Civil Service Act). As the Legislature withdrew section 11191's consent requirement before the transfer

4

About seven months after Governor Schwarzenegger issued the proclamation, the California Legislature deleted section 11191's written consent requirement.[3] When doing so, the Legislature also provided that the written consent requirement would be reinstated by the earlier of July 1, 2011, or the date when in-state prison facilities achieved the requisite inmate capacity.  Cal. Penal Code § 11191(c).  The CDCR has also amended its regulations in response to the proclamation and the Legislature's amendment of section 11191.  See Cal. Code Regs. tit. 15, § 3379(a)(9).

Consequently, even assuming section 11191 vested plaintiff with a liberty interest in preventing his involuntary transfer to an out-of-state prison at the time he was sentenced, that interest no longer existed when the CDCR initiated his transfer on May 30, 2008.  As the Ninth Circuit has recognized, "[a] state-created liberty interest exists only as long as the

---

at issue in this case, the court need not address plaintiff's argument that Governor Schwarzenegger exceeded his authority when he mandated the involuntary transfer of prisoners.

[3]  While the Legislature deleted "but no inmate sentenced under California law may be committed or transferred to an institution outside of this state, unless he has executed a written consent to the transfer," it left language which could arguably suggest that the CDCR is still required to obtain written consent to effectuate an out-of-state transfer.  See Cal. Penal Code § 11191(a) ("The inmate . . . shall be informed of those rights prior to executing the written consent.  At any time more than five years after the transfer, the inmate shall be entitled to revoke his consent and to transfer to an institution in this state.") (emphasis added).  The Legislature's deletion of the only language expressly requiring written consent and the unequivocal statements in the legislative history memorializing its intent to remove the written consent requirement, see, e.g., A.B. 900, Legislative Counsel's Digest 4 (May 3, 2007) ("This bill would, until a specified date, eliminate the consent requirement, except in certain circumstances."), dispel any ambiguity that could result from the unaltered language.

5

statute or regulation creating it remains effective.  If the state repeals the statute or eliminates the regulation, the liberty interest ceases to exist." Toussaint, 801 F.2d at 1092; cf. Atkins v. Parker, 472 U.S. 115, 129-30 (1985) ("The procedural component of the Due Process Clause does not 'impose a constitutional limitation on the power of Congress to make substantive changes in the law of entitlement to public benefits.' . . . '[T]he legislative determination provides all the process that is due.'") (citations omitted) (alteration in original).

At a minimum, therefore, the Legislature's amendment of section 11191 on May 3, 2007, terminated any statutorily created liberty interest plaintiff may have had in choosing to remain in an in-state prison.  Accordingly, because plaintiff does not have a cognizable liberty interest under the Due Process Clause, the Magistrate Judge properly dismissed that component of his § 1983 claim.  With respect to the remaining allegations giving rise to plaintiff's § 1983 claim and plaintiff's request for injunctive relief, the court will dismiss plaintiff's Complaint for the reasons stated in the Magistrate Judge's Findings and Recommendations.

IT IS THEREFORE ORDERED that

(1) the Magistrate Judge's Findings and Recommendations of December 20, 2008, be, and the same hereby are, adopted to the extent they are consistent with this Order;

(2) plaintiff's Complaint be, and the same hereby is, dismissed with prejudice for failure to state a claim upon which relief can be granted;

1           (3) plaintiff's request for injunctive relief be, and
2  the same hereby is, denied with prejudice; and
3           (4) the Clerk of the Court is directed to enter
4  judgment and close this case.
5  DATED:  February 4, 2009

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

7